**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Michael STEPHENS,
Defendant-Appellant.**

No. 82–8236.

United States Court of Appeals,
Eleventh Circuit.

March 3, 1983.

W. Bruce Maloy (court-appointed), Atlanta, Ga., for defendant-appellant.

Rimantas A. Rukstele, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before HENDERSON and HATCHETT, Circuit Judges, and TUTTLE, Senior Circuit Judge.

ALBERT J. HENDERSON, Circuit Judge:

James Michael Stephens appeals from the judgment of the United States District

Court for the Northern District of Georgia denying his motion to "correct" his presentence investigation report. Essentially, he asks this court to expand the requirements of Rule 32 of the Federal Rules of Criminal Procedure and well established former Fifth Circuit precedent [1] to impose a duty upon a sentencing judge to make findings of fact concerning the accuracy of a presentence report. Because we find that current standards provide adequate protection, we decline to adopt his suggestion.

An undercover Drug Enforcement Administration (DEA) investigation culminated in the arrests of Stephens and Michael W. Cassell for conspiracy to distribute and the substantive offense of distribution of cocaine. 21 U.S.C. §§ 841(a)(1), 846. Afterwards, as a result of negotiations with the government, Stephens signed a plea agreement stipulating to the dismissal of the conspiracy count and the recommendation of the government for a sentence not to exceed three years incarceration on the substantive count.[2] In connection with the plea bargain, the government submitted a "Government's Version" of the facts underlying the indictment for the consideration of the sentencing judge. In pertinent part, the document reported:

> Stephens participated in discussions about the sale, [of cocaine] but there is no evidence that Stephens was Cassell's source. It appears that Cassell was the more culpable of the two with Stephens assisting him.

The "Government's Version" stated that Cassell and Stephens delivered one kilo of cocaine at the arrest location. The report further expressed the view that "Cassell was involved in discussions pertaining to future deliveries of quantities of drugs; however, there is no indication Stephens was involved in these discussions."

After the district court accepted the plea agreement, a presentence investigation was conducted by the probation office and a report was prepared for submission to the district judge. According to the presentence investigation report, "defendant James Michael Stephens, is believed to be the *more* culpable of the two codefendants ... Cassell appeared to have been put out front by Stephens in a more vulnerable position ..." (emphasis added). The probation office's report also indicated that Stephens' criminal activity involved four, rather than one, kilo of cocaine.

Stephens' attorney was afforded the opportunity to review the presentence report. The district court held a hearing at which Stephens attempted to rebut portions of the report. At this hearing, the recorded testimony of a DEA agent and Stephens' wife was introduced as well as the testimony of an expert on alternative sentencing. Subsequently, Stephens sought a correction of the presentence report to conform to the original "Government's Version." Counsel for the government informed the court that it would "stand by" its account; the probation department responded that it would rest on its rendition of the facts without modification.

The court then ruled that it found no reason to ascertain the correct facts because the differences would "not enter into the decision." After noting that both defendants were involved in the crime and that the crime is a serious one warranting a term of custody, the court sentenced Stephens to three years incarceration followed by a five year special parole term. Thus, the court imposed the maximum sentence authorized under the plea agreement—a sentence well within the fifteen-year limitation of the criminal statute.

Stephens' sole contention on appeal is that the district judge should have made factual findings relating to the disputed facts in the presentence investigation report and corrected the report accordingly. Particularly, he challenges the probation of-

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

2. The maximum punishment is fifteen years imprisonment. 21 U.S.C. § 841(b)(1)(A).

fice's characterization of him as the more culpable codefendant and the apparent inference that he was involved in the discussions concerning future drug deliveries evidenced by the reference to four kilos of cocaine in the report. Because Stephens believes that this divergence must have influenced the district judge's sentencing decision, he urges that factual findings by the district court are necessary to protect his due process rights. In addition, he contends that the use of the challenged report in its present form poses a substantial risk to his eligibility for early release unless mitigated by the requested factual findings.

Rule 32(c)(3)(A) of the Federal Rules of Criminal Procedure governs procedures pertaining to presentence investigation reports. That rule provides that:

> [b]efore imposing sentence the court shall upon request permit the defendant, or his counsel if he is so represented, to read the report of presentence investigation exclusive of any recommendation as to sentence . . . ; and the court shall afford the defendant or his counsel an opportunity to comment thereon and, at the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in the presentence report.

Fed.R.Crim.P. 32(c)(3)(A). The rule does not require the district judge to make factual findings when the defendant contests the accuracy of the facts in the presentence report.

In *United States v. Battaglia*, 478 F.2d 854 (5th Cir.1972); *United States v. Espinoza*, 481 F.2d 553 (5th Cir.1973) and *Shelton v. United States*, 497 F.2d 156 (5th Cir.1974), the former Fifth Circuit Court of Appeals examined a defendant's due process rights in relation to the use of presentence investigation reports by sentencing judges. These cases, which preceded the enactment of the current Rule 32, held that

> [w]here a sentencing judge *explicitly relies* on certain information in assessing a sentence, fundamental fairness requires that a defendant be given at least some opportunity to rebut that information.

*Espinoza*, 481 F.2d at 556. The interest protected under *Battaglia*, *Espinoza* and *Shelton* is the right not to be sentenced *on the basis of* invalid premises. *United States v. Hodges*, 556 F.2d 366, 369 (5th Cir.1977), *cert. denied*, 434 U.S. 1016, 98 S.Ct. 735, 54 L.Ed.2d 762 (1978). The promulgation of Rule 32, providing for disclosure of the report, an opportunity to comment thereon and, in the discretion of the sentencing judge, to introduce testimony to contradict the report, did not alter the nature of the interest protected. The former Fifth Circuit continued to require only that the defendant be provided the means to rebut the information contained in the report. *See, e.g., United States v. Gonzalez*, 661 F.2d 488, 495 (5th Cir. Unit B 1981).

Stephens was given the opportunity to refute the perceived discrepancies in the presentence report. The district judge permitted him to introduce testimony to substantiate his contentions of inaccuracy. Thus, Rule 32 was followed to the letter. We are not persuaded that a sentencing judge is required to go further and make findings to resolve the possible conflicting versions presented by government agents or agencies.

As noted by the former Fifth Circuit in *Espinoza*, the due process right not to be sentenced on the basis of inaccurate information has been "limited . . . to prevent the sentencing process from turning into a full-scale evidentiary-type hearing." 481 F.2d at 556. Even though some testimony may be received, the sentencing process is not a trial. Its purpose is to ensure that the district court is sufficiently informed to enable it to exercise its sentencing discretion in an enlightened manner. Having been presented with some contradictory facts, the district court may, within its discretion, determine that it has adequate undisputed information to properly sentence the defendant. That is what occurred in this case. In such a situation, there is no need for the district judge to make findings.

■ Moreover, as pointed out earlier, the district court unequivocally stated that he did not rely upon the disputed facts. We have no reason to doubt the validity of this statement. *See United States v. Aremedo-Sarmiento,* 545 F.2d 785, 795 (2d Cir.1976), *cert. denied,* 430 U.S. 917, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1977). District judges are granted wide latitude in considering factors relevant to a sentencing decision. *See Gonzalez,* 661 F.2d at 495. Nothing in the record indicates that the district court sentenced Stephens *on the basis of* inaccurate information. *Cf. United States v. Aguero-Segovia,* 622 F.2d 131 (5th Cir.1980).

■ Finally, Stephens' concern that the "uncorrected" report will adversely affect his chances for early release or other matters relating to his incarceration does not convince us of the necessity of factual findings. A district court faced with conflicting renditions of some of the facts respecting a defendant's past is in no position, without conducting a full-scale trial at every sentencing hearing, to make written factual findings. The additional burden that would be imposed in requiring a sentencing judge to ascertain the truth about contradicted matters in a presentence report is not warranted under the circumstances.[3]

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

**3.** The district court included the "Government's Version" and a transcript of the sentencing hearing in Stephens' record. We approve of this procedure. Although not required to do so, in making this information available to correctional officers, the district court effectively alerts such officers to disputed facts of the defendant's background.